```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROSE PINTO,                      :    CIVIL ACTION
                                 :    NO. 22-3991
         Plaintiff,              :
                                 :
    v.                           :
                                 :
ST. PAUL FIRE & MARINE           :
INS. CO., et al.,                :
                                 :
         Defendants.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 26, 2023

## I.    INTRODUCTION

Plaintiff, Rose Pinto, brings this action against Defendant, St. Paul Fire and Marine Insurance Company,[1] for an alleged breach of contract. On September 19, 2022, Plaintiff filed her complaint in the Philadelphia Court of Common Pleas. Defendant filed a notice of removal on the basis of diversity jurisdiction on October 6, 2022. See ECF No. 1.

Before the Court are Defendant's Motion to Transfer or Dismiss for Lack of Personal Jurisdiction and Motion for

---

[1] Plaintiff's Complaint uses the names of both St. Paul Fire and Marine Insurance Company and a former affiliate, St. Paul Insurance Company, Inc. The affiliate no longer exists because it was merged into St. Paul Fire and Marine Insurance Company in 2002. Except where otherwise indicated, both companies are referred to as Defendant herein.

Judgment on the Pleadings. See ECF Nos. 30 & 31. For the reasons stated herein, the Court will grant Defendant's Motion to Transfer and deny Defendant's Motion for Judgment on the Pleadings as moot.

## II.  BACKGROUND

In 1982, Plaintiff filed suit in the United States District Court for the District of New Jersey in an action captioned Rose Pinto v. Robert Callahan, Case No. 82-cv-2956 (the "New Jersey Action"), to recover for injuries she sustained in an automobile accident in New Jersey. Defendant insured one or more of the defendants in the New Jersey Action. The parties in the New Jersey Action, as well as Defendant, were represented by New Jersey counsel, who informed the court of the essential settlement terms. Defendant's counsel stated that, pursuant to the settlement, Defendant "specifically does not in any way guarantee or agree to be liable to the plaintiff for payment of the structured benefits"; that "[p]laintiff and plaintiff's counsel understand that St. Paul will fund an annuity that yields the benefits that have been described"; and that Defendant "will have no further obligation to the plaintiff relative to this settlement." Plaintiff's New Jersey counsel raised no objection to these points.

The parties then documented the settlement in a Settlement Agreement and Release (the "SAR"). The payment terms of the SAR

2

were consistent with the settlement terms that the parties had placed on the record. The only difference was that the total payments to be made to Plaintiff increased from $8,519,000 to $8,794,000, and the provider of the annuity used to fund the future payments was changed to the Executive Life Insurance Company of New York ("ELNY"). The SAR authorized Defendant to pay periodic payments to Plaintiff "through the purchase of a financial vehicle including but not limited to an annuity policy from" ELNY. The SAR also provided that Defendant "may, as a matter of right and in its sole discretion, assign its duties and obligations to make such future payments to First Executive Corporation ["FEC"]," ELNY's parent company. The SAR provided the following regarding the assignment:

> Such assignment, if made, is hereby accepted by Rose Pinto without right of rejection and in full discharge and release of the duties and obligations of St. Paul Insurance Company, Inc.
>
> The parties hereto expressly understand and agree that if an assignment of its duties and obligations to make such future payments is made by St. Paul Insurance Company, Inc. to First Executive Corporation pursuant to this agreement, all of the duties and responsibilities otherwise imposed upon St. Paul Insurance Company, Inc. by this agreement with respect to such future payments shall instead by binding solely upon First Executive Corporation.

The SAR states that it was executed August 3, 1984. Plaintiff's signature was notarized that date in Pennsylvania. Defendant's signature was notarized September 13, 1984 in New Jersey.

3

On July 24, 1984, one week before Plaintiff signed the SAR, Defendant signed an ELNY Application for an Immediate Annuity (the "Annuity Application") to fund the settlement payments specified in the SAR, beginning with a monthly payment due in August 1984. The Annuity Application, which was signed by Defendant in New Jersey, listed Plaintiff as the sole Annuitant and Payee and included a "Schedule of Payments" matching the agreed schedule of future periodic payments set out in the SAR. The "single premium" charged for the ELNY Annuity was $495,968.38. Defendant made that payment, and ELNY issued an annuity (the "ELNY Annuity") to fund the future payments under the SAR with a July 26, 1984 "Date of Issue."

Also before the SAR was signed, Defendant and FEC signed an Assignment dated July 27, 1984 (the "Qualified Assignment"). Under the Qualified Assignment, Defendant, as "Assignor" assigned to FEC, and FEC as "Assignee" assumed Defendant's "liability . . . to make periodic payments in the amounts and at the times set forth in the Schedule of Payments attached as Ex. A to Payee . . . as damages on account of personal injury or sickness." The Qualified Assignment stated that it was "intended to constitute a qualified assignment within the meaning of Section 130(c) of the Internal Revenue Code." Also on July 27, 1984, in New Jersey, Defendant executed an Absolute Assignment transferring ownership of the ELNY Annuity to FEC (the "Absolute

4

Assignment"). Defendant paid the $1,000 fee for the assignment, referencing its New Jersey "Adjusting Office."

Plaintiff acknowledges that "[a]ll payments due to Ms. Pinto under [the SAR] were paid as contracted through July 2013[.]" Those payments included the $204,000 lump sum payment "to be paid on or before August 31, 1984[,]" which was not among the periodic lump sum payments and monthly payments to be made under the ELNY Annuity. However, during the September 13, 1984 hearing in the New Jersey Action, Plaintiff's New Jersey counsel informed the court that "this initial cash payment was provided" to cover his attorney's fees and expenses totaling $193,132.68. It appears that this initial lump sum payment was delivered to Plaintiff's New Jersey counsel. For the next twenty-nine (29) years, until 2013, all payments under the SAR were paid directly to Plaintiff by ELNY under the ELNY Annuity.

In April 1991, ELNY was placed in rehabilitation at the request of the New York Superintendent of Insurance (the "Superintendent"). In September 2011, the Superintendent petitioned the Receivership Court to convert the ELNY rehabilitation to a liquidation and to approve an Agreement of Restructuring in Connection with the Liquidation of ELNY (the "ELNY Restructuring Agreement"), under which benefits less than approximately twenty percent (20%) of the ELNY annuities (the "Shortfall Annuities") would have to be reduced. See In re Exec.

5

Life Ins. Co., 959 N.Y.S.2d 513, 514 (N.Y. App. Div. 2013). The ELNY Annuity issued to fund payments under the SAR was one of the Shortfall Annuities. On or about December 7, 2011, the Superintendent (through the New York Liquidation Bureau) sent to the payee under each Shortfall Annuity a letter (the "Benefit Reduction Notice") notifying the payee of the pending liquidation and summarizing the ELNY Restructuring Agreement, including the anticipated annuity benefit reductions. Each Benefit Reduction Notice was accompanied by an individual "Statement of Estimated Financial Impact" indicating the amount of the estimated reduction of the payee's benefits. Plaintiff received a Benefit Reduction Notice and a Statement of Estimated Financial Impact in December 2011.

In April 2012, the Receivership Court entered an Order of Liquidation and Approval of the ELNY Restructuring agreement. Following unsuccessful appeals by objecting annuity payees, ELNY was liquidated and the ELNY Restructuring Agreement was implemented, effective August 13, 2013 (the "ELNY Liquidation Date"). See In re Exec. Life Ins. Co., 959 N.Y.S.2d at 514. Since August 2013, Plaintiff's ELNY Annuity benefits have been reduced to approximately 55.26%.

On November 5, 2021, Plaintiff brought suit against Defendant in the New Jersey District Court in an action styled Pinto v. St. Paul Fire & Marine Ins. Co., No. 2:21-cv-19733-SRC-

6

MAH (the "New Jersey SAR Action"). Plaintiff's complaint in the New Jersey SAR Action made similar allegations "for breach of contract arising under the laws of New Jersey" and sought the same relief that Plaintiff seeks here, based on Defendant's alleged breach of the SAR. On January 19, 2022, Defendant moved to dismiss the New Jersey SAR Action on the grounds that it was barred by the statute of limitations and by the release and discharge provision of the SAR. On January 28, 2022, Plaintiff voluntarily dismissed the New Jersey SAR Action without prejudice. On September 19, 2022, Plaintiff refiled in the Eastern District of Pennsylvania. The Court held a hearing on May 23, 2023 to consider Defendant's Motion to Transfer or Dismiss for Lack of Personal Jurisdiction and Motion for Judgment on the Pleadings.

### III.  LEGAL STANDARD

Under Fed. R. Civ. P. 12(h)(1), a defendant bears the burden of raising lack of personal jurisdiction as it is a waivable defense. Fed. R. Civ. P. 12(h)(1). Once the defense has been raised, the burden then shifts to the plaintiff to prove that jurisdiction exists. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

A district court deciding a challenge to its jurisdiction over a defendant has discretion to either hold an evidentiary hearing on the motion or to decide it based on the parties'

7

submissions. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (considering a district court's ruling on a 12(b)(2) motion without holding an evidentiary hearing); Doe v. Hesketh, 15 F. Supp. 3d 586, 591 (E.D. Pa. 2014) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2013) ("A district court considering a challenge to its jurisdiction over a defendant has 'considerable leeway in choosing a methodology for deciding the motion.'")). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants . . . . [W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Id. at 97 (citations omitted). While the Court held a hearing in this case, it was non-evidentiary and thus, the Court requires only a prima facie showing of jurisdiction to defeat the motion.

A defendant's contacts with a forum must be sufficient to create either general or specific jurisdiction. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction requires that a defendant's "affiliations with the State [be] 'so continuous and systematic' as to render [it]

8

essentially at home in the forum state." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413 (2017) (citations omitted). To establish specific jurisdiction, a plaintiff must demonstrate the following: (1) that a defendant has "purposefully directed [its] activities' at the forum"; (2) that the claim "'arise[s] out of or relate[s] to' at least one of those activities"; and (3) that the exercise of jurisdiction "comport[s] with 'fair play and substantial justice.'" O'Connor, 496 F.3d at 317 (citations omitted).

**IV.   DISCUSSION**

Defendant moves to transfer this action to the forum where Plaintiff first brought suit--the District of New Jersey--or alternatively, to dismiss this action, arguing that the Court lacks personal jurisdiction over Defendant.[2]

---

[2] Plaintiff argues that Defendant waived its objection to personal jurisdiction. Under Federal Rule of Civil Procedure 12(h)(1)(B), a party preserves the defense of lack of personal jurisdiction by "include[ing] it in a responsive pleading." Fed. R. Civ. P. 12(h)(1)(B). "A defendant may raise a personal jurisdiction defense simply by denying the plaintiff's averments." Baby Merlin Co. v. CribCulture, LLC, No. 18-cv-3288, 2018 WL 11225243, at *1 n.1 (E.D. Pa. Dec. 17, 2018) (Robreno, J.) (citing Saunders v. N. Am. Van Lines, Inc., No. CIV. A. 90-2019, 1990 WL 72941, at *1 (E.D. Pa. May 23, 1990)). Paragraph 6

9

It is clear that the Court lacks general jurisdiction over Defendant because Defendant is organized under the laws of Connecticut with its principal place of business in Connecticut. The issue is whether the Court can exercise specific jurisdiction in this case. As noted above, "when the court does

---

of Plaintiff's Complaint made allegations regarding Defendant's issuance of insurance policies in Pennsylvania, and then alleged that "Defendants are subject to the jurisdiction . . . of this Court and the venue is proper here." In response, Paragraph 6 of Defendant's original answer admitted in part Plaintiff's allegations about its sale of insurance policies in Pennsylvania, but stated as to Plaintiff's allegations of personal jurisdiction and venue: "The remainder of paragraph 6 sets forth legal conclusions and characterizations to which no response is required. To the extent a response is nonetheless deemed required, [Defendant] denies those allegations." Plaintiff argues that this denial was ambiguous, however, Paragraph 6 of Defendant's original answer parsed the allegations in Paragraph 6 of Plaintiff's complaint, admitting in part the factual allegations while denying the allegations of personal jurisdiction and venue, consistent with basic pleading rules. See Fed. R. Civ. P. 8(b)(4). This denial was sufficient to preserve the defense.

Plaintiff also contends that Defendant waived the defense by seeking affirmative relief by counterclaim. However, it is well-established that including a counterclaim in the answer does not waive a personal jurisdiction defense. Neifeld v. Steinberg, 438 F.2d 423, 427-28 (3d Cir. 1971). This applies to both permissive and compulsory counterclaims, but it even more clearly holds where, as here, the counterclaim is compulsory because it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A); Neifeld, 438 F.2d at 427-28. Moreover, Plaintiff's argument also ignores the amendments to Defendant's counterclaims, which expressly state that they are made "subject to and without waiver of . . . its denial of personal jurisdiction." See Am. Answer 9, 20; ECF No. 12. When the Court granted Plaintiff an opportunity to move to strike the Amended Counterclaim, Plaintiff denied the invitation and expressly "consented" to the filing. ECF No. 21.

not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc., 384 F.3d at 97 (citations omitted).

First, Defendant argues that it lacks minimum contacts with Pennsylvania in this action. For Plaintiff to establish that Defendant purposefully directed its activities towards Pennsylvania, "[t]here must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). In the Complaint, Plaintiff notes that Defendant entered into the SAR with a resident of Pennsylvania. Compl. ¶ 8. "It is well established, however, that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident." Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 32 (3d Cir. 1993). When determining whether the Court has specific jurisdiction over contract claims, the Court considers "the totality of the circumstances, including the location and character of the

11

contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

Here, the negotiations and other events giving rise to the SAR took place in New Jersey and were undertaken to resolve a lawsuit filed by Plaintiff in New Jersey arising from an automobile accident in New Jersey. The parties in the New Jersey Action, as well as Defendant here, were each represented by New Jersey counsel in settlement negotiations. The operative terms of the SAR do not reference Pennsylvania, and they impose no express obligation on either party to perform in Pennsylvania. Plaintiff does not claim that Defendant undertook any activity in Pennsylvania during the course of its performance under the SAR--from June 22, 1984, when the settlement was placed on the record in the New Jersey Action, to September 13, 1984, when Defendant signed the SAR.[3]

The Third Circuit has found that a plaintiff's jurisdictional arguments "are not persuasive" where the nonresident defendant bank "concluded its negotiations with a

---

[3] During that period, Defendant submitted the ELNY Annuity Application and paid the Annuity premium to an agent in New Jersey. Defendant also signed the Qualified and Absolute Assignments to FEC in New Jersey and submitted them to a New Jersey agent. The initial lump sum settlement payment under the SAR appears to have been delivered by Defendant to Plaintiff's New Jersey counsel.

12

New York law firm, delivered security interests to a New York trustee, and had on direct dealings with [the resident plaintiff] other than wire transfers of payments." Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 214 (3d Cir. 1984). The Third Circuit noted that "[t]hese circumstances created no expectation of submission to the jurisdiction of Pennsylvania courts" and "do not constitute purposeful availing of the privilege of conducting activity within the forum state." Id.; see also Elias v. Energy Reduction Sys., Inc., No. 92-cv-4971, 1993 WL 55932, at *4 (E.D. Pa. Mar. 2, 1993) ("the fact that payments were made, or would be made, to plaintiff in Pennsylvania [is not] a sufficient jurisdictional nexus"); Radian Guar. Inc. v. Beltway Cap., LLC, No. 10-cv-7549, 2012 WL 13035111, at *1 n.1 (E.D. Pa. Jan. 26, 2012) ("making premium and renewal payments to [the forum plaintiff]. . . , standing alone, . . . do[es] not rise to the level of the purposeful minimum contacts required for personal jurisdiction."); Dawes-Lloyd v. Weisbrot, No. 09-cv-2388, 2010 WL 3463293, at *3 (E.D. Pa. Aug. 31, 2010) ("Payment between contracting parties, and telephone calls placed or mail sent to the forum state by a party to the formation of a contract do not suffice to establish minimum contacts."); ANR, Inc. v. Rothner, No. CIV.A. 06-2872, 2007 WL 712539, at *3-4 (E.D. Pa. Mar. 6, 2007) ("the fact that the Defendants have made payments on the Promissory Note to the

13

Plaintiff at its Pennsylvania address and periodically phoned the Plaintiff are insufficient to establish minimum contacts and support a finding of personal jurisdiction"). Plaintiff has not established that any of Defendant's actions relating to the SAR "purposefully avail[ed] itself of the privilege of conducting activities within" Pennsylvania. Vetrotex, 75 F.3d at 150.

Plaintiff relies on the theory that the "payments that [Defendant] obligated itself to make in the [SAR] were to be paid to [Plaintiff] at her home in Pennsylvania." However, the SAR required that payments be made to Plaintiff regardless of where she resided, making the payment in Pennsylvania purely fortuitous. And regardless, Plaintiff now receives payments by direct deposit in a bank account rather than at her Pennsylvania address.

In short, as the Supreme Court has taught--the "minimum contacts" inquiry is not satisfied by pointing to contacts between the plaintiff (or third parties) and the forum State, as Plaintiff attempts to do here. Walden v. Fiore, 571 U.S. 277, 284 (2014) (citation omitted).

Second, Plaintiff's claim does not "arise out of or relate to" Defendant's purposefully targeted activities in Pennsylvania. O'Connor, 496 F.3d at 318 (citation omitted). Although Defendant is licensed to conduct insurance business in Pennsylvania and has issued many policies in Pennsylvania,

14

Compl. ¶ 6, Plaintiff's claim does not arise from Defendant's sale of insurance in the state. Instead, as Plaintiff states, the only one of Defendant's insurance policies involved in this matter is "the underlying liability coverage" issued to the defendants in the New Jersey Action who were found liable for causing Plaintiff's injuries there. Id. ¶ 8.

The other alleged activity in Pennsylvania which Plaintiff attempts to base its claim to specific personal jurisdiction--delivery of payments under the SAR to Plaintiff "at her home in Pennsylvania," id. at ¶ 14--is insufficient to establish minimum contacts in that, as discussed above, they are contacts between the plaintiff and the forum and not between the defendants and the forum.[4]

Plaintiff argues that she can establish specific jurisdiction based on the Supreme Court's decision in Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S.Ct. 1017 (2021).[5] In Ford, Montana and Minnesota residents brought product

---

[4] In any event, as Plaintiff's allegations show, the reduced payments on which Plaintiff bases her claim were made by ELNY (or its successor, Guaranty Association Benefits Company), not by Defendant. Id. at ¶¶ 14, 15, 19, 20.

[5] During the non-evidentiary hearing, Plaintiff's counsel presented the Court with additional cases in support of Plaintiff's argument. The Court allowed defense counsel to submit a letter reply addressing the cases. Upon examination, the Court concludes that the additional authorities do not support Plaintiff's argument as follows.

15

liability suits against Ford in their respective states based on injuries they suffered as a result of car accidents in those states involving vehicles manufactured by Ford. Each state's supreme court upheld specific jurisdiction over the company, finding that Ford had purposefully created a "market" for its vehicles in the state by advertising, establishing dealerships, and selling vehicles and parts in the state, thereby encouraging state residents to "purchase and drive more Ford vehicles," including the same types of vehicles involved in the plaintiffs' accidents. The Supreme Court affirmed, endorsing the state supreme courts' conclusions that "Ford urges Montanans and Minnesotans to buy its vehicles" and "to become lifelong Ford

---

In Martinez v. Union Office Meccaniche S.P.A., No. 22-1364, 2023 WL 3336644 (3d Cir. May 10, 2023), the Third Circuit affirmed a denial of exercise of personal jurisdiction where, as here, the defendant's Pennsylvania contacts lacked a "strong relationship" to the plaintiff's claims. Id. at *2.

Mold Medics LLC v. All Am. Restoration Corp., No. 21-cv-1851, 2022 WL 3999886 (W.D. Pa. Sept. 1, 2022) is distinguishable because the trademark infringement claim arose from defendants' communication to Pennsylvania residents using the plaintiff's trademark and therefore "deliberate[ly] target[ed]" the forum. Id. at *6-10 (citation omitted).

Yerkes v. Weiss, No. CV 17-2493, 2022 WL 1229933 (D.N.J. Apr. 26, 2022) addresses choice of law, not personal jurisdiction.

In Travelers Cas. & Sur. Co. v. Copeland Corp. LLC, No. 22-cv-725, 2022 WL 18831493 (W.D. Pa. Nov. 30, 2022), the court held that, although the insurance policies at issue were issued in Pennsylvania to the defendant's parent company, that alone did not provide a sufficient basis for exercising personal jurisdiction over the defendant. Id. at *13-14.

drivers." Id. at 1028. Applying the requirement of specific jurisdiction "that the suit 'arise out of or relate to the defendant's contacts with the forum,'" the Court explained: "In other words, Ford has systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong 'relationship among the defendant, the forum, and the litigation'--the essential foundation of specific jurisdiction." Id. at 1028 (citation omitted).

Here, the "strong relationship" is lacking. Plaintiff does not explain how Defendant's conduct of insurance business in Pennsylvania relates to her claim--the only "connection" Plaintiff identifies between this case and Pennsylvania is the parties' conduct in relation to the SAR. Simply put, Plaintiff's New Jersey car accident, her New Jersey Action, and the resulting settlement in a New Jersey court do not relate to any insurance policy issued by Defendant in Pennsylvania.

Third, Plaintiff does not establish that "the assertion of personal jurisdiction would comport with fair play and substantial justice." BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 260 (3d Cir. 2000) (quotation omitted). When evaluating this factor, the Court must consider: (1) the burden on Defendant; (2) the forum State's interest in adjudicating the dispute; (3) Plaintiff's interest in obtaining

17

convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 205-06 (3d Cir. 1998). Here, each of these factors point toward New Jersey rather than Pennsylvania as the appropriate forum for resolving this matter.

Where a court does not have personal jurisdiction over a defendant, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631; D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 106-07 (3d Cir. 2009). This action could have been brought in New Jersey, (in fact it once was,) and it is in the interest of justice to transfer the action there. And so it will be ordered.

Finally, given the lack of personal jurisdiction over Defendant, Defendant's Motion for Judgment on the Pleadings will be denied as moot.

### V. CONCLUSION

For the reasons set forth above, this action will be transferred to the District of New Jersey. Defendant's motion

for judgment on the pleadings will be denied as moot. Finally, the motion for leave to file a reply brief will be granted.

An appropriate order follows.