UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROSE PINTO,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>    v.<br><br>ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY and ST. PAUL<br>INSURANCE COMPANY,<br><br>    Defendants/Counterclaim Plaintiffs. | Civil Action No. 23-2926 (RK) (JBD)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Judgment on the Pleadings, ("MJP," ECF No. 84-1), filed by Defendant/Counterclaim Plaintiff St. Paul Fire and Marine Insurance Company[1] ("St. Paul" or "Defendant") seeking judgment on the Complaint, ("Compl.," ECF No. 1-1), filed by Plaintiff/Counterclaim Defendant Rose Pinto ("Plaintiff" or "Pinto"). Plaintiff filed a brief in opposition to the motion for judgment on the pleadings, (ECF No. 85), and Defendant filed a reply brief, (ECF No. 86).[2] The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion for Judgment on the Pleadings is **DENIED**.

---

[1] Plaintiff's Complaint uses the names of both St. Paul Fire and Marine Insurance Company and former affiliate St. Paul Insurance Company, Inc. The affiliate no longer exists and was merged into St. Paul Fire and Marine Insurance Company in 2002. Both companies are referred to as St. Paul or Defendant herein unless otherwise indicated.

[2] Plaintiff's Motion for Leave to File a Sur-Reply to the Motion for Judgment on the Pleadings is **DENIED**. (ECF No. 87.)

## I.   **BACKGROUND**

### A.   PROCEDURAL HISTORY

On September 20, 2022, Plaintiff filed suit against Defendant in the Court of Common Pleas of Philadelphia, Pennsylvania. (ECF No. 1-2 at 3.) Thereafter, on October 6, 2022, Defendant removed this action to the Eastern District of Pennsylvania. (ECF No. 1.) On November 11, 2022, Defendant filed an Answer and Counterclaim, and on December 15, 2022, filed an amended Answer and Counterclaim. (ECF Nos. 8, 12.) On December 22, 2022, Plaintiff filed her answer and affirmative defenses to the Counterclaim. (ECF No. 20.) On February 16, 2023, Defendant filed a Motion to Transfer the case to the District of New Jersey or Alternatively to Dismiss for Lack of Personal Jurisdiction, as well as a Motion for Judgment on the Pleadings. (ECF Nos. 30, 31.)

On May 26. 2023, after this motion was fully briefed and oral argument had been held, the Honorable Eduardo C. Robreno, U.S.D.J. issued a Memorandum Opinion granting Defendant's Motion to Transfer the case to the District of New Jersey and denying the Motion for Judgment on the Pleadings as moot. ("Prior Op.," ECF No. 46.) Judge Robreno found that the Eastern District of Pennsylvania did not have personal jurisdiction over Defendant, and that the action could have been filed in New Jersey. (*Id.* at 18–19.)

Upon transfer to this Court, Defendant filed a letter requesting a pre-motion conference regarding an anticipated motion for judgment on the pleadings and Plaintiff replied. (ECF Nos. 65, 73.) The Court held a conference with the parties on August 1, 2023. (ECF No. 74.) The parties

thereafter submitted renewed briefing on Defendant's Motion for Judgment on the Pleadings. (*See* ECF Nos. 84, 85, 86.)[3]

### B.   FACTUAL BACKGROUND

The underlying facts of this dispute are well known to the parties and have been thoroughly discussed and set forth in Judge Robreno's prior Memorandum Opinion. (*See* Prior Op. at 2–7.) In summary, Plaintiff is an annuitant who brought this action in Pennsylvania state court against Defendant, an insurer, for breach of a settlement and release agreement after Plaintiff's annuity payments were reduced. (Compl. ¶¶ 7–40.) In 1981, Plaintiff suffered serious injuries as a result of a car accident in New Jersey. (*Id.* ¶¶ 2, 7, 11.) Plaintiff thereafter filed suit in the District of New Jersey to recover for the injuries she sustained.[4] (*Id.* ¶¶ 2, 7.) Defendant was the excess insurer for one or more of the defendants in the New Jersey action. (*Id.* ¶ 8.) The parties in the 1982 Action ultimately settled the case, signing a Settlement Agreement and Release (the "SAR"), which culminated in an annuity and lump sum payment schedule to be paid out unconditionally over the following 45 years. (*Id.* ¶¶ 2, 8, 12–14.)

Pursuant to the SAR, Defendant funded and purchased an annuity provided by the Executive Life Insurance Company of New York ("ELNY"), whose parent company was the First Executive Corporation ("FEC"). (*Id.* ¶ 15; Opp. at 3.) The SAR was signed by Plaintiff on August 3, 1984. (Compl. ¶ 8.) A corporate representative of Defendant signed the SAR on September 13, 1984. (*Id.* ¶ 9.) Defendant alleges it discharged all obligations and liabilities to Plaintiff via the

---

[3] On October 13, 2023 Plaintiff moved this court for leave to file a sur reply, Defendant opposed, and Plaintiff replied. (ECF Nos. 87, 88, 89.)

[4] The 1982 New Jersey action was captioned *Rose Pinto v. Robert Callahan*, Civ. No. 82-2956 (the "1982 Action").

SAR, the annuity payment, and its assignment of all liabilities and obligations to FEC. (ECF No. 12 at 4.)[5]

Plaintiff received her payments pursuant to the settlement without issue until August 2013, when her benefits were reduced by approximately 55.26% pursuant to ELNY's liquidation and restructuring.[6] (Compl. ¶ 19.) Following an unproductive series of letters exchanged with Defendant's counsel after the reduction of benefits took effect, Plaintiff brought suit against Defendant in the District of New Jersey on November 5, 2021 (the "2021 Action"). (MJP at 10–11.) The 2021 Action largely mirrored the allegations and relief sought in the action at hand. (*Id.* at 11.) Defendant moved to dismiss the 2021 Action on the basis that it was barred by the statute of limitations and by the SAR's release and discharge provision. (*Id.*) Plaintiff voluntarily dismissed the 2021 Action without prejudice, and then refiled in the Court of Common Pleas of Philadelphia County. (*Id.* at 11–12; ECF No. 1) As recited above, Defendant St. Paul then successfully removed this case to the Eastern District of Pennsylvania and then transferred to the District of New Jersey. (Prior Op at 1.)

Defendant has filed a counterclaim against Plaintiff for (1) a declaratory judgment that Plaintiff's claims are barred by the release and discharge provisions of the SAR and the relevant statutes of limitations and (2) Plaintiff's breach of the release and discharge provisions of the SAR by bringing this action and other litigation attempts against the Defendant. (ECF No. 12 at 18–20.) Defendant seeks compensatory damages pursuant to Plaintiff's repeated claims for the shortfall in her annuity payments. (*Id.* at 19–20.)

---

[5] Defendant restarts its paragraph numbers on page 9 of ECF No. 12. To avoid confusion, the Court will cite to the document's internal pagination rather than the numbered paragraphs.
[6] The details of ELNY's bankruptcy are immaterial to the facts of this case. However, for additional information regarding ELNY's rehabilitation and subsequent restructuring and liquidation, *see In re Exec. Life Ins. Co. of New York*, 103 A.D.3d 631, 959 N.Y.S.2d 513 (2013).

## II.    <u>LEGAL STANDARD</u>

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (internal quotation marks and citation omitted).

In reviewing a motion for judgment on the pleadings, courts apply the same standard as when reviewing a motion to dismiss under Rule (12)(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); *see also Muhammad v. Sarkos*, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014). Under Rule (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked

assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). As such, "[a] complaint should not be dismissed unless it appears beyond doubt that 'the facts alleged in the complaint, even if true, fail to support the claim.'" *Syncsort Inc. v. Sequential Software, Inc.*, 50 F.Supp.2d 318, 324 (D.N.J. 1999). "[B]efore dismissing a complaint under Rule 12(c), 'a district court must permit a curative amendment, unless an amendment would be inequitable or futile.'" *In re Nat'l Pool Const., Inc.*, No. 12-2157, 2012 WL 3277107, at *2 (D.N.J. Aug. 9, 2012) (quoting *Phillips*, 515 F.3d at 236).

## III.   **DISCUSSION**

Defendant moves for judgment on the pleadings on the basis that (1) the SAR's assignment and release provision bars Plaintiff from bringing claims against St. Paul and (2) the New Jersey statutes of limitations on Plaintiff's claims have run such that her claims are untimely. (MJP at 13–37.) Plaintiff opposes both bases for judgment on the pleadings, arguing (1) St. Paul did not validly assign its obligations to FEC and (2) her claims are not time barred. (Opp. at 16–39.)

Here, accepting the factual allegations in the light most favorable to Plaintiff, both the assignment and the statute of limitations issues require additional discovery, and issues of material fact remain. As such, it is premature to consider dismissal at this preliminary stage.[7] The Court's analysis follows.

---

[7] The Court also notes that, in its Counterclaim, Defendant seeks a declaratory judgment that Plaintiff's claims are barred in their entirety, and for compensatory damages for Plaintiff's breach of the SAR's release clause by bringing this and past legal complaints. (MJP at 39.) Plaintiff responds that she has not violated any provision of the SAR and that a declaratory judgment against her would be inappropriate as "Plaintiff is the party who has suffered loss and damage as a result of St. Paul's refusal to pay as required under the [SAR]." (ECF No. 20 ¶¶ 45–56.) Defendant's counterclaim is similarly not ripe for judgment at this stage of the proceedings. *See Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318 (3d Cir. 2005) (affirming the trial court's grant of an insurer's motion for a declaratory judgment concerning its duty to indemnify at the summary judgment stage); *Westfield Ins. Co. v. Chico*, No. 15-116, 2016 WL 4548444, at *1 (N.D.W. Va. Aug. 31, 2016) (determining at summary judgment whether contractual language meant an insurer did not cover specific claims at issue); *see also ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 557 (D.N.J. 2009) (characterizing an insurer seeking declaratory judgment at the

A.   **ASSIGNMENT**

The initial terms of the settlement were entered into the record in the 1982 Action on June 22, 1984. (Prior Op. at 2.)[8] In the executed SAR, the parties agreed that Defendant was authorized to make periodic payments "through the purchase of a financial vehicle" which included an annuity policy from ELNY. (Compl. ¶ 23.) One week prior to Plaintiff signing the SAR, on July 24, 1984, Defendant signed an ELNY application for creation of an immediate annuity to fund the settlement payments. (ECF No. 12 at 12.) ELNY issued the annuity on July 26, 1984. (*Id.*) Later that week, Defendant and FEC signed an assignment, referred to by the parties as the "Qualified Assignment" where Defendant, as assignor, purported to assign FEC its "liability . . . to make periodic payments in the amounts and at the times set forth" in the schedule of payments agreed upon by the parties. (*Id.* at 12–13 (citing ECF No. 12-5).) On the same day, Defendant executed a document titled "Absolute Assignment" transferring ownership of the ELNY annuity to FEC. (*Id.* at 13.) Defendant paid $1,000 for the assignment. (*Id.*) Plaintiff ultimately signed the SAR on August 3, 1984. (Opp. at 3.)

Defendant argues that the SAR allowed it to "assign its duties and obligations" with respect to future payments to Plaintiff, and thus its obligations were entirely discharged after the SAR's execution in September 1984. (MJP at 5.) According to Defendant, "even before the SAR was signed, [Defendant] had satisfied the requirements for Plaintiff's 'full discharge and release of the duties and obligations of St. Paul.'" (*Id.* at 7.) Defendant contends that the Qualified Assignment was made pursuant to Section 130 of the Internal Revenue Code, 26 U.S.C. § 130, which

---

motion to dismiss stage as "put[ting] the proverbial cart before the horse" as the Court could not yet rule on the underlying facts that would support such a judgment).

[8] The parties dispute the extent that the final SAR comported with the terms related to the court. (MJP at 35; Opp. at 26.)

"authorized 'qualified assignments' of periodic payment obligations in order to promote use of structured settlements to resolve tort claims . . . arising from personal physical injuries." (*Id.* at 7–8.)

Plaintiff responds that Defendant's assignment of obligations to FEC was invalid. (Opp. at 23–37.)[9] First, Plaintiff argues that the SAR is a complete and binding contract in and of itself, and thus Defendant cannot bring in parol evidence in order to "explain unambiguous terms" in the SAR. (*Id.* at 23.) Next, Plaintiff contends that Defendant attempts to convert the Qualified Assignment into an enforceable contract through a factually and legally flawed theory of incorporation by reference into the SAR. (*Id.* at 25–26.) Plaintiff argues that, among other issues, Defendant could not have assigned its obligations under the SAR because the SAR had not yet been signed or executed by Plaintiff on the date that both the Qualified Assignment and Absolute Assignment were executed. (*Id.* at 27.) Further, Plaintiff avers that such a contract required the relevant settlement agreement to be attached, which it could not have been given that the SAR had not yet been executed. (*Id.* at 30–31.)

Plaintiff also raises an argument that the Qualified Assignment itself was "illusory" due to particular contract language "unique" to FEC assignments that differs in meaningful ways from the sample qualified assignments from organizations such as the National Structured Settlement Trade Association. (*Id.* at 8, 33.) Under Plaintiff's framing, the Qualified Assignment language "granted [FEC] a future defense to any liability, [and thus] no consideration flowed" from FEC. (*Id.* at 37.) Plaintiff relies on the Georgia state court decision *Abate v. NGM Insurance Company*, No. 2014-1765, 2022 WL 20439160, at *1 (Ga.State Ct. Mar. 31, 2022) which examined the FEC

---

[9] As a structural matter, Plaintiff clarifies that its position is that the SAR, the Qualified Assignment, and the Absolute Assignment are three separate contracts with separate parties and must be treated as such. (Opp. at 23.)

assignment clause at issue at the summary judgment phase and found it lacking.[10] (*Id.* at 14, 32–39.)

At this preliminary stage of the proceedings, the Court relies on the pleadings, as it must, and construes all ambiguous facts in favor of the Plaintiff. *Syncsort Inc.*, 50 F.Supp.2d at 324. However, in deciding a motion for judgment on the pleadings, the court can also consider documents integral to or explicitly relied upon in the pleadings and particularly in contract actions can review the underlying contracts. *See Enrunda Trading Co. v. MTM Trading LLC*, No. 17-3763, 2018 WL 11241079, at *4 n.6 (D.N.J. Mar. 29, 2018); *see also In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1426 (3d Cir.1997). Here, the Court has reviewed the SAR, the Qualified Assignment, and the Absolute Assignment, as well as the undisputedly authentic transcript from the June 22, 1984 on-the-record conference with the court in the 1982 Action during which the initial settlement terms were placed on the record (attached to ECF No. 12 as Ex. A). (Prior Op. at 2; ECF No. 20 ¶ 6.)

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med.*, LLC, 541 F. Supp. 2d 612, 617 (D. Del. 2008). The Court finds that Plaintiff has sufficiently alleged facts that Defendant's assignment was invalid. Questions of contract interpretation and analysis of the validity of assignments in structured settlement cases are typically left to the summary judgment posture of proceedings rather than the motion to dismiss stage. *See, e.g., Shaw v. United States*,

---

[10] Plaintiff acknowledges the Court of Appeals of Georgia reversed the trial court's holding related to the "illusory" nature of the FEC assignment. *See NGM Ins. Co. v. Abate*, 367 Ga. App. 419, 425 (2023), *reconsideration denied* (Mar. 30, 2023). Counsel for plaintiff applied for *certiorari* to the Georgia Supreme Court, but the case settled before that court ruled. (Opp. at 39.) Plaintiff argues this court should still be informed by the Georgia State Court's analysis.

900 F.3d 1379, 1382 (Fed. Cir. 2018) (collecting cases where the federal government's obligations to structured settlement annuitants impacted by the ELNY restructuring were determined at the summary judgment phase); *Bowman Transp., Inc. v. Heinsohn*, 72 F.3d 126 (4th Cir. 1995) (reviewing the trial court's determination at the summary judgment phase that the settlement agreement was unambiguous and fully integrated); *Abate*, 367 Ga. App. at 419 (affirming the trial court's finding at the summary judgment phase that defendant still had liability to plaintiff by the terms of the settlement agreement and reversing the trial court's determination that the terms of the assignment were illusory); *Thornton v. Hubill, Inc.*, 571 N.W.2d 30, 31 (Iowa Ct. App. 1997) (reviewing the trial court's grant of summary judgment motion against plaintiff on a dispute regarding his FEC annuity pursuant to a settlement agreement); *cf. Yerkes v. Cessna Aircraft Co.*, No. 14-05925, 2015 WL 3903569, at *2 (D.N.J. June 25, 2015) (granting a motion to dismiss where plaintiff admitted assignment was "properly executed" and plaintiff was a signatory). At this stage of litigation, there are issues of material fact, and as such, it is not ripe for dismissal. *See e.g., Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Zonko Builders, Inc.*, No. 21-437, 2021 WL 4061564, at *12 (D. Del. Sept. 7, 2021) (denying a motion for judgment on the pleadings where the court could not determine on the face of the pleadings if rights had been assigned to a party).

Here, Plaintiff has sufficiently demonstrated fact-sensitive questions regarding the validity of the assignment to FEC, including questions regarding the process by which the assignment was conducted and its incorporation into the SAR, to merit further exploration in discovery. *Venetec Int'l., Inc.*, 541 F. Supp. 2d at 622 (denying a motion for partial judgment on the pleadings because "[a]t the present stage of the litigation the court cannot reach [the] conclusion" that there are no material issues of fact); *see also Dovale v. Marketsource, Inc.*, No. 05-2872, 2006 WL 2385099, at *6 (D.N.J. Aug. 17, 2006) ("'all allegations of the moving party which have been denied by the

non-moving party must be taken as false'") (quoting *Menifee v. Rexam, Inc.*, No. 7522, 2005 WL 2230257, at *2 (N.D. Ohio Sept. 13, 2005)).

In particular, Plaintiff raises factual questions regarding the timing of the Qualified Assignment, the validity of Defendant's ability to assign those rights at the time of execution, and whether the subsequent incorporation by reference of the Qualified Assignment into the SAR was proper. Such questions are fact-sensitive and cannot be adjudicated at this preliminary stage of the proceedings. *Wishnefsky v. Sommers*, No. 96-7964, 1997 WL 148582, at *1 (E.D. Pa. Mar. 21, 1997) ("[A] court may only grant [a Rule 12(c)] motion if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief.").

B.   STATUTE OF LIMITATIONS

The question of the applicable statute of limitations is similarly not yet ripe for determination. "Generally speaking, it is inappropriate to consider an affirmative defense such as the statute of limitations under Rule 12(c)." *Nat'l Pool Const., Inc.*, 2012 WL 3277107, at *2; *see also Voicheck v. Ford Motor Co.*, No. 12-6534, 2013 WL 1844273, at *1 n.3 (E.D. Pa. May 2, 2013). A district court may only "take into consideration an affirmative defense if such a defense 'presents an insuperable barrier to recovery by the plaintiff.'" *Id.* (quoting *Flight Sys. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997)). In such a case, "[t]his defect in the plaintiff's claim must 'appear on the face of the pleading.'" *Id.* (quoting *Continental Collieries v. Shober*, 130 F.2d 631, 635–36 (3d Cir.1942)).

Plaintiff makes multiple arguments on a variety of bases for why this Court should not dismiss on the issue of the statute of limitations. (Opp. at 16–22.) Principally, Plaintiff argues that St. Paul did not breach the SAR until August 2013, when the first partial payment was made, and, additionally, if partial payments are applied to the oldest deficiencies first, then Plaintiff does not

suffer a shortfall until July 2019. (*Id.* at 16–17 (citing *L&B 57th Street, Inc. v. E.M Blanchard, Inc.*, 143 F.3d 88, 91 (2d Cir. 1998); *In re American Paper Co.*, 255 F. 121, 124 (D.N.J., 1919)).) Plaintiff further argues that under New Jersey law each partial payment is a separate breach and a separate cause of action, and that Defendant improperly relies on a theory of anticipatory breach. (*Id.* at 19– 20.)[11]

Defendant argues this action is subject to New Jersey's six-year statute of limitations for breach of contract actions where the contract is not under seal. (MJP at 14–17.) In the alternative, Defendant argues that even if the contract was under seal, the sixteen-year statute of limitations has expired because Plaintiff's argument lies in a breach that occurred in 1984, when the SAR was signed and executed. (*Id.* at 19.) Defendant avers that caselaw regarding recurring breach does not apply where, as here, defendant "'deliberately repudiate[ed]' the future payment obligation" (ECF No. 86 at 2 (quoting *R.C. Beeson, Inc. v Coca Cola Co.*, 337 Fed. App'x. 244 (3d Cir. 2009)).) Defendant further contends that Plaintiff is wrong on both the law and facts of the doctrine of anticipatory breach. (*Id.* at 4.) Finally, Defendant disagrees on both the facts and the law behind Plaintiff's theory of reallocating partial payments to previous shortfalls, and the impact of such a theory on a statute of limitations argument. (*Id.* at 6.)

As a general matter, fact sensitive disputes over the applicable statute of limitations and when it shall be triggered are properly adjudicated at a later stage of litigation with the parties having had the benefit of discovery rather than in a motion for judgment on the pleadings. *See, e.g., Schmidt v. Skolas*, 770 F.3d 241, 252 (3d Cir. 2014)) (finding the district court's dismissal on the statute of limitations "was not appropriate at the motion to dismiss stage" because such a

---

[11] At this time, the Court need not reach Plaintiff's additional arguments relating to the applicability of the *Yerkes*' court's determination of the applicable statute of limitations or the question of whether the SAR was under seal.

dismissal "effectively required [plaintiff] to plead around an affirmative defense in his complaint);
*Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011) (vacating dismissal by the
district court because the pleading did not reveal when the limitations period began to run, and
thus "the statute of limitations cannot justify Rule 12 dismissal"); *Northview Motors, Inc. v.
Chrysler Motors Corp.*, 227 F.3d 78, 85 (3d Cir. 2000) (reviewing district court's application of
statutes of limitations at the summary judgment stage); *Sun v. Han*, No. 15-703, 2015 WL
9304542, at *18 (D.N.J. Dec. 21, 2015) (denying dismissal under Rule 12 because there remained
a factual dispute as to whether Plaintiff's claims were "necessarily time-barred.")

Courts in the Third Circuit frequently determine the application of statutes of limitations
in disputes related to insurers at the summary judgment stage of proceedings. *See, e.g., Kucera v.
Metro. Life Ins. Co.*, 719 F.2d 678, 679 (3d Cir. 1983) (reviewing the trial court's grant of summary
judgment based on the statute of limitations); *Foster v. Alexander & Alexander Servs. Inc.*, No.
91-1179, 1995 WL 27447, at *2 (E.D. Pa. Jan. 23, 1995) ("It is appropriate for the court to
adjudicate a statute of limitations defense on a motion for summary judgment"); *cf. Hammersmith
v. TIG Ins. Co.*, 480 F.3d 220, 242 (3d Cir. 2007) (reviewing the trial court's adjudication of a
motion for summary judgment determining insurer liability where the issue turned on timely
notification); *but cf. Beaman v. Bank of Am.*, N.A., No. 21-20561, 2024 WL 3219224, at *28–29
(D.N.J. June 28, 2024) (granting in part a motion to dismiss where the parties agreed on the
applicable statute of limitations and the continuing violations doctrine did not apply).

At this preliminary stage of the proceedings the Court accepts all facts as alleged by
Plaintiff as true. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) ("[A] court must 'accept
all factual allegations in the complaint as true and view them in the light most favorable to the
plaintiff.'") (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)). On

the face of the pleadings, Plaintiff has sufficiently alleged facts that show the questions of which statute of limitations applies and when such is triggered are fact-sensitive, and rely on threshold determinations regarding the contracts at issue in this case. *See Jablonski*, 863 F.2d at 290 ("[J]udgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved.") (internal citations and quotation marks omitted); *see also Bruce v. City of Pittston, Pennsylvania*, No. 23-00711, 2023 WL 6609023, at *5 (M.D. Pa. Oct. 10, 2023), *appeal dismissed sub nom. Bruce v. City of Pittston*, No. 23-3081, 2024 WL 2350645 (3d Cir. Apr. 2, 2024) (dismissing a complaint under Rule 12(c) where it was "well established" what statute of limitations should be applied to plaintiff's claim); *see also TIAA-CREF Large-Cap Growth Fund v. Allergan PLC*, No. 17-11089, 2021 WL 4473156, at *7 (D.N.J. Sept. 30, 2021) (finding that fact-sensitive inquiries as to when statutes of limitations should begin tolling are "'not appropriate at this early stage of the proceedings'") (quoting *Cal. Pub. Emps' Ret. Sys. v. Chubb Corp.*, No. 00-4285, 2002 WL 33934282, at *25–26 (D.N.J. June 26, 2002)). [12]

In addition, the factual question of whether there was an anticipatory breach generally as a matter of New Jersey law is not one that should be adjudicated at a motion for judgment on the pleadings. *See Ready & Motivated Minds, LLC v. Ceridian Corp.*, No. 10-1654, 2011 WL 831776, at *5 (D.N.J. Mar. 2, 2011) (declining to rule on an argument concerning anticipatory breach and

---

[12] In the Third Circuit, in order to avoid dismissal on a motion for judgment on the pleadings on the basis of a statute of limitations, "all that is necessary is that a plaintiff pleads the applicability of an equitable doctrine." *Nat'l Pool Const., Inc.*, 2012 WL 3277107, at *2 (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir.1994)). "[E]ven if the original complaint does not sufficiently plead the applicability of an equitable doctrine, a plaintiff should be afforded an opportunity to amend its pleadings." *Id.* (internal citations omitted). Although Plaintiff did not explicitly make such an argument here, it is clear that plaintiff must be given the opportunity to do so under the liberal amendment provisions in Rule 15(a). *Id.* ("[B]efore dismissing a complaint under Rule 12(c), 'a district court must permit a curative amendment, unless an amendment would be inequitable or futile.'") (quoting *Phillips*, 515 F.3d at 236.) Accordingly, even if the Court were to grant the motion for judgment on the pleadings on the statute of limitations argument, it would be an exercise in futility and an inefficient waste of the parties' and court's time and resources, as Plaintiff would almost certainly amend the complaint to add the required argument.

a statute of limitations at the motion to dismiss stage because "[s]uch a determination is a matter of contractual interpretation and requires further factual development"); § 1368 Judgment on the Pleadings—Practice Under Rule 12(c), *5C Fed. Prac. & Proc. (Wright & Miller)*, Civ. § 1368 (3d ed.) ("Although [a Rule 12(c)] motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further . . . hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense.")

Thus, the Court denies Defendant's Motion for Judgment on the Pleadings on the basis of the statute of limitations.

IV.   **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Judgment on the Pleadings, (ECF No. 84), is **DENIED**. An appropriate Order accompanies this opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: July 19, 2024

16