**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROSE PINTO,<br><br>        Plaintiff,<br><br>v.<br><br>ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY et al.,<br><br>        Defendants. | Civil Action No. 23-2926 (RK) (JBD)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon cross motions for summary judgment filed by Defendants St. Paul Fire and Marine Insurance Company and St. Paul Insurance Company, Inc. (collectively, "Defendants" or "St. Paul") ("Defs. MSJ," ECF No. 125-1) and Plaintiff Rose Pinto ("Plaintiff") ("Pl. MSJ," ECF No. 126-1). The parties opposed each other's motions ("Pl. Opp.," ECF No. 127; "Defs. Opp.," ECF No. 128) and replied ("Pl. Reply," ECF No. 129; "Defs. Reply," ECF No. 130). The parties also submitted statements of material facts in support of their respective motions ("Defs. SUMF," ECF No. 125-2; "Pl. SUMF," ECF No. 126-2) and responses thereto ("Resp. to Defs. SUMF," ECF No. 127-2; "Resp. to Pl. SUMF," ECF No. 128-1). Plaintiff also filed a supplemental statement of material facts ("Pl. SSUMF," ECF No. 127-3) and St. Paul responded ("Resp. to Pl. SSUMF," 130-1). Plaintiff also submitted a Notice of Supplemental Authority ("Pl. Supp. Notice," ECF No. 133) and St. Paul responded ("Resp. to Pl. Supp. Notice,"

ECF No. 134).[1] The Court has considered the parties' submissions and resolves the pending motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, St. Paul's Motion for Summary Judgment is **GRANTED**.[2]

## I.    BACKGROUND

The facts of this case are well known to the parties and recited in the previous opinions in this case. *See Pinto v. St. Paul Fire & Marine Ins. Co.*, 674 F. Supp. 3d 176, 179–81 (E.D. Pa. 2023) [hereinafter *Pinto I*]; *Pinto v. St. Paul Fire & Marine Ins. Co.*, No. 23-2926, 2024 WL 3471135, at *1–2 (D.N.J. July 19, 2024) [hereinafter *Pinto II*]. Accordingly, the Court recites only the relevant facts. Plaintiff's claim is for a breach of contract and St. Paul filed a counterclaim seeking a declaratory judgment.[3] (*ECF* No. 1-1 ¶¶ 38–39; ECF No. 12, Counterclaim ¶¶ 45–50.)

Four and a half decades ago, Plaintiff was seriously injured in a car accident in New Jersey. (Pl. SUMF ¶ 1.) She filed suit in a court in this District, and her case was tried to a verdict as to liability. (*Id.* ¶ 2.) After liability was established, Plaintiff settled with St. Paul, one of the excess insurance carriers for a defendant in that case. (*Id.*) As part of that settlement agreement, Plaintiff was to be given a lump sum payment of $204,000, monthly payments for 50 years, and lump sum

---

[1] Although the parties did not seek leave to file these documents, as they should have, the Court has nonetheless considered the noticed authority. *See Gonzalez v. Lyft, Inc.*, No. 19-20569, 2020 WL 7183573, at *1 n.1 (D.N.J. Oct. 13, 2020), *report and recommendation adopted*, 2021 WL 303024 (D.N.J. Jan. 29, 2021). However, the Court will not consider any arguments included within the parties' notices. *See Atkins v. Capri Training Ctr., Inc.*, No. 13-6820, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014) ("Generally, if pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments . . . ." (citing *Beazer E., Inc. v. Mead Corp.*, 525 F.3d 255, 264 (3d Cir. 2008))).

[2] Because the Court grants St. Paul's Motion for Summary Judgment on Statute of limitations grounds, it need not address other arguments for summary judgment raised by either party.

[3] St. Paul also filed a second counterclaim seeking damages for breach of release and discharge. (ECF No. 12, Counterclaim ¶¶ 50–56.) The parties stipulated to the dismissal of this counterclaim, and the Court granted that request. (ECF No. 132.)

payments every five years for 45 years, for a total payment of $8,590,000. (Defs. SUMF ¶¶ 4–5.) This agreement was memorialized in a settlement agreement and release (the "SAR"). (*Id.* ¶¶ 1–5; Pl. SUMF ¶¶ 3, 5.) These future payments were funded through St. Paul's purchase of annuity from Executive Life Insurance of New York ("ELNY"). (Pl. SUMF ¶ 3.) The agreement between St. Paul and ELNY was memorialized in an assignment agreement St. Paul made with ELNY's parent company, First Executive Corporation ("FEC") (the "Assignment"). (*Id.* ¶¶ 4, 6.) The parties dispute when the Assignment was signed and whether certain documents were attached to the SAR and Assignment. (*Id.* ¶¶ 6, 13, 14; Resp. to Pl. SUMF ¶¶ 6, 13, 14.)

ELNY made risky investments in junk bonds, and the value of these bonds collapsed. (Pl. SUMF ¶ 4.) FEC filed for bankruptcy in 1991, and ELNY was placed in rehabilitation. (Pl. SUMF ¶ 15; Defs. SUMF ¶ 39.) ELNY was liquidated effective August of 2013, causing Plaintiff's annuity payments to be reduced by about half from that time onward, presumably until the termination as per the settlement, in or around August 2034. (Defs. SUMF ¶¶ 44–46; ECF No. 125-5 at 3.[4])

In December 2012 an attorney for Plaintiff contacted Travelers (a successor entity to St. Paul) via letter to inquire if Travelers would make up the difference between her payments as described in the SAR and what they were reduced to due to ELNY's financial troubles. (ECF No. 125-19; Defs. SUMF ¶¶ 48, 50; Resp. to Defs. SUMF ¶¶ 48, 50.). Approximately a week later, an attorney for Travelers, Craig Ulman, responded via letter that Travelers would not make up the shortfall. (ECF No. 125-20; Defs. SUMF ¶ 52; Resp. to Defs. SUMF ¶ 52.). Approximately two weeks later, in response to another letter from Plaintiff's counsel, Counsel for Travelers again

---

[4] Due to inconsistent pagination, the Court uses the page numbers generated by ECF for all documents other than transcripts and the parties' briefs.

3

advised unambiguously via letter that "St. Paul has no responsibility for the continuing payments."[5] (ECF No. 125-22 at 3; *see* ECF No. 125-21; Defs. SUMF ¶¶ 53–54; Resp. to Defs. SUMF ¶¶ 53–54.) Thereafter, after waiting for more than three years, new counsel for Plaintiff sent, via letter, a "formal demand" to St. Paul requesting that St. Paul "make up the shortfall Ms. Pinto experienced." (ECF No. 125-23 at 3; *see also* Defs. SUMF ¶ 55; Resp. to Defs. SUMF ¶ 55.) On March 14, 2016, Mr. Ulman again rejected the request explaining that:

> St. Paul's position regarding Ms. Pinto's payments has not changed since December 27, 2012, when I sent the attached letter to Ms. Pinto's previous counsel, Rosalie Spelman. . . . St. Paul has no responsibility for the continuing payments, or for the shortfalls in those payments that have occurred since August 2013, when ELNY was liquidated.

(ECF No. 125-24 at 2; *see also* Defs. SUMF ¶ 56; Resp. to Defs. SUMF ¶ 56.) The reduced payments prompted by the liquidation commenced in August 2013 and continued thereafter. (Defs. SUMF ¶¶ 54, 56; Resp. to Defs. SUMF ¶¶ 54, 56.)

In 2021, approximately five years after the last letter to St. Paul and eight years after Plaintiff's payments were reduced, Plaintiff filed suit for breach of contract against St. Paul in this District. *Pinto v. St. Paul Fire & Marine Ins. Co.*, No. 21-19733 (D.N.J); (Defs. SUMF ¶ 60; Resp. to Defs. SUMF ¶ 60.) After St. Paul moved to dismiss based on statute of limitations grounds and the SAR, Plaintiff voluntarily dismissed the case. *Pinto v. St. Paul Fire & Marine Ins. Co.*, No. 21-19733, ECF Nos. 9, 14 (D.N.J); (Defs. SUMF ¶ 61; Resp. to Defs. SUMF ¶ 61.) Demonstrating her awareness of statute of limitations issues, Plaintiff then refiled her claims in Pennsylvania for what she refers to as "strategy reasons relating to statutes of limitations." (Resp. to Defs. SUMF ¶ 60); *see also Pinto I*, 674 F. Supp. 3d at 179. The case was then removed from the Philadelphia

---

[5] While the parties dispute the characterization of the 2012 correspondence (i.e., whether it constituted a "demand"), the parties do not dispute that such correspondence occurred. (*See* Defs. SUMF ¶ 50; Resp. to Defs. SUMF ¶ 50.)

Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania. *Pinto I*, 674 F. Supp. 3d at 179. St. Paul filed a motion to transfer or dismiss for lack of personal jurisdiction and a motion for judgment on the pleadings. (ECF Nos. 30–31); *Pinto I*, 674 F. Supp. 3d at 179. The Honorable Eduardo C. Rebreno, U.S.D.J., granted St. Paul's motion to transfer, holding that the Eastern District of Pennsylvania lacked personal jurisdiction over St. Paul. *Pinto I*, 674 F. Supp. 3d at 179, 186.

Upon transfer, this case was assigned to the Undersigned. (*See* Docket Entry dated May 30, 2023.) The parties then submitted renewed briefing for St. Paul's motion for judgment on the pleadings. (ECF Nos. 84–86); *Pinto II*, 2024 WL 3471135, at *1. The Court denied the motion, holding that there were factual questions concerning the SAR, Assignment, and statute of limitations issues that could not be decided on the pleadings. *Pinto II*, 2024 WL 3471135, at *3– 7. Instead, the Court determined that these issues were best left for summary judgment. *Id.* at *5– 7. Accordingly, the parties proceeded through discovery and now move for summary judgment.

## II.    <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Put another way, "[s]ummary judgment is designed . . . to assess whether a genuine issue of material fact exists and whether a trial is necessary." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the party seeking summary judgment carries its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "set forth specific

facts showing that there is a genuine issue for trial." *Id.* at 256. "[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint," *Orsatti*, 71 F.3d at 484 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), and a court's duty to view all facts and inferences in the light most favorable to the nonmoving party does not extend to "the mere allegations or denials of his pleadings" unsupported by factual evidence, *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014)). "Nor will '[b]are assertions, conclusory allegations, or suspicions' suffice." *Id.* (alteration in original) (quoting *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018)); *see also Jackson v. Danberg*, 594 F.3d 210, 228 (3d Cir. 2010) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (internal quotation marks omitted)). Likewise, the movant may establish entitlement to judgment as a matter of law by showing that the plaintiff's evidence is insufficient to establish an essential element of his claim. This showing "necessarily renders all other facts immaterial," such that "there can be no genuine issue as to any material fact" for a jury to decide. *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

## III.    **DISCUSSION**

The dispositive issue in this case is whether Plaintiff's action was brought within the applicable statute of limitations period. It was not. Accordingly, the Court grants summary judgment in favor of St. Paul.

St. Paul argues that New Jersey's six-year statute of limitations for breach contract actions

applies to this case, and Plaintiff does not seem to disagree.[6] (*See* Defs. MSJ at 17 & n.12; Pl. MSJ at 36–37.) The Court agrees that this is the appropriate statute of limitations period. While this case was originally brought in the Eastern District of Pennsylvania, it was transferred to this District due to lack of personal jurisdiction. *See Pinto I*, 674 F. Supp. 3d at 186. Because the transfer was for lack of jurisdiction, this Court applies the same choice of law rules it applies to cases originally filed in this District. *See Doe v. Archdiocese of Phila.*, No. 22-3419, 2023 WL 12205100, at *1 n.1 (E.D. Pa. Jan. 27, 2023) (collecting cases). In a diversity action, a federal district court applies the choice of law rules of the state in which it sits. *See, e.g., Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). So the Court applies New Jersey's choice of law rules for statute of limitations issues. Under those rules, absent "exceptional circumstances," New Jersey applies its own statute of limitations as long as the state has a "significant interest." *McCarrell v. Hoffman-La Roche, Inc.*, 153 A.3d 207, 223–24 (N.J. 2017). New Jersey has a significant interest here because the automobile accident; subsequent suit, which went to trial and established liability; settlement at the genesis of this dispute; and Plaintiff's suit, which she filed in 2021 then voluntarily dismissed and refiled in Pennsylvania due to statute of limitations concerns—all took place in New Jersey. *See Pinto I*, 674 F. Supp. 3d at 181, 186 (discussing some of these facts in deciding to transfer the case to New Jersey). Additionally, neither the Court nor the parties have identified any exceptional circumstances supporting a different result. Accordingly, the Court applies New Jersey's six-year statute of limitations for breach of contract actions.[7] *See* N.J. Stat. Ann. § 2A:14-1(a).

---

[6] Accordingly, any choice of law issue is forfeited. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316–17 (3d Cir. 2014); *Wark v. J5 Consulting, LLC*, No. 23-266, 2023 WL 6366731, at *10 n.9 (D.N.J. Sept. 29, 2023).

[7] New Jersey applies a longer limitations period for breach of contract actions based on a contract that is "under seal." N.J. Stat. Ann. § 2A:14-4. However, Plaintiff does not meaningfully argue that the SAR qualifies as such a contract. (*See* Pl. MSJ at 22, 38 (in passing referring to the SAR as under seal); Opp. to

This action was filed on September 19, 2022, so Plaintiff's breach of contract claim is timely if it accrued after September 19, 2016 and it is untimely if it accrued before. (*See* ECF No. 1-1 at 8.) "[U]nder New Jersey law, a cause of action arising from a breach of contract accrues when the defendant breached the contract." *Peck v. Donovan*, 565 F. App'x 66, 69 (3d Cir. 2012). The parties dispute when the alleged breach occurred. St. Paul contends that the breach occurred in 1984 or, alternatively, in December 2012 or August 2013 or, at the absolute latest, in March 2016. (Defs. MSJ at 18, 22; Defs. Opp. at 23.) Plaintiff, on the other hand, argues that the initial breach took place in August of 2013, that each partial payment thereafter was a separate breach, and that the partial payments she received were allocated towards the earliest deficiencies first, meaning she did not incur any damages until August 2019. (Pl. MSJ at 34–35.)

## A.    THE BREACH OCCURRED IN MARCH 2016 AT THE LATEST

The breach occurred in August 2013 or, at the latest, March 2016, rendering Plaintiff's claim untimely. Pursuant to ELNY's liquidation, a hardship fund was created to provide payments to some individuals whose annuities were decreased due to the liquidation. (*See* Resp. to Defs. SUMF ¶ 48); *see also In re Exec. Life Ins. of N.Y.*, No. 8023/1991, 2012 WL 1577968, at *1 (N.Y. Sup. Ct. Apr. 16, 2012), *aff'd*, 959 N.Y.S.2d 513 (App. Div. 2013). As indicated by the fund's website, "funds w[ould] not be provided where there [wa]s an insurer or other annuity owner that

---

Defs. MSJ at 17, 27, 31 (same)); *Higgins v. Bayada Home Hlth. Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (arguments not "develop[ed]" and made in "passing" are forfeited). In any event, this argument would fail on the merits. While the word "(SEAL)" appears printed next to each signature in the SAR, that is not sufficient to render the document sealed under N.J. Stat. Ann. § 2A:14-4. (ECF No. 125-5 at 5); *see Zirbser v. Wells Fargo Bank, N.A.*, No. 19-1099, 2019 WL 3244621, at *2 (D.N.J. July 19, 2019); *Fidelity Union Tr. Co. v. Fitzpatrick*, 46 A.2d 837, 838–39 (N.J. 1946). Instead, to be considered sealed, a document must contain "words in the body of the agreement indicating that it was a sealed instrument" in addition to a "device" of sealing such as the word "seal" or "sealed" *Fidelity Union Tr. Co.*, 46 A.2d at 838; *see Zirbser*, 2019 WL 3244621, at *2 ("To be considered 'sealed,' the contract must include (1) a device; and (2) a statement of sealing."). While the word "(SEAL)" may constitute the required "device," the SAR does not contain the required statement of sealing.

remain[ed] obligated under a structured settlement agreement for amounts not paid by ELNY." (Resp. to Defs. SUMF ¶ 48 (internal quotation marks omitted).) In 2012, Plaintiff retained an attorney, she claims, to assist her with an application to the hardship fund. (*Id.* ¶ 47.) As part of that process, that attorney, via letter, communicated in writing with "a representative of Travelers [a successor entity to St. Paul] to see if they were going to live up to their shortfall obligation." (*Id.* ¶ 48 (internal quotation marks omitted); *see also id.* ¶¶ 48–54.) In a December 2012 email exchange with attached letters, Mr. Ulman, an attorney for St. Paul, twice responded to Plaintiff's counsel's letters. In the first letter, he explained that St. Paul was not "responsible" for making up the shortfalls in Plaintiff's payments, and in the second, he explained that "[h]aving made an assignment to First Executive Corporation, as expressly authorized by Ms. Pinto in the [SAR], St. Paul has no responsibility for the continuing payments." (ECF No. 125-20 at 2; ECF No. 125-22 at 3; *see* Defs. SUMF ¶¶ 52, 54; Resp. to Defs. SUMF ¶¶ 52, 54.) ELNY's liquidation became effective in August of 2013, and that same month, payments to Plaintiff were reduced by slightly more than half. (Defs. SUMF ¶¶ 44, 46.)

Under New Jersey law on installment contracts—that is, certain contracts that provide for periodic payments—"absent a repudiation, a plaintiff may sue for each breach only as it occurs, and the statute of limitations begins to run at that time." *Metromedia Co. v. Hartz Mountain Assocs.*, 655 A.2d 1379, 1381 (N.J. 1995); *see Nat'l Util. Serv., Inc. v. Cambridge-Lee Indus., Inc.*, 199 F. App'x 139, 142 (3d Cir. 2006). However, a repudiation by the party obligated to make payments changes things. As the United States Court of Appeals for the Third Circuit explained in applying New Jersey law, "a combination of an act deliberately repudiating the agreement and an act indicating to the non-breaching party that any future performance either will not occur or will not be in compliance with the contract terms commences the running of the statute of

9

limitations." *R.C. Beeson, Inc. v. Coca Cola Co.*, 337 F. App'x 241, 244 (3d Cir. 2009). Here, St. Paul repudiated the agreement in December 2012 by making it clear, twice, that they were not liable for future payments and thus allegedly materially breached the agreement in August 2013 by reducing Plaintiff's payments. Thus, the statute of limitations began to run in August 2013.

Plaintiff contends that St. Paul's counsel's December 2012 email was not a repudiation. (Pl. Reply at 8.) However, the email's plain language—that "St. Paul has no responsibility for the continuing payments"—is unmistakably clear. (ECF No. 125-22 at 3); *see R.C. Beeson, Inc.*, 337 F. App'x at 244 ("Repudiation 'entails a statement or voluntary affirmative act indicating that the promisor will commit a breach when performance becomes due.'" (quoting *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002))). Moreover, even in Mr. Ulman's deposition relied on by Plaintiff, Mr. Ulman testified that "[a]s reflected in [the] letter," he concluded "that St. Paul did not owe future payments to . . . Ms. Pinto under the settlement." (ECF No. 126-6, Tab B at 90:8–13; *see id.* at 92:11–15 ("I concluded that St. Paul had no continuing liability, no liability, at all as of December of 2012"); *id.* at 92:24–93:9; *see also* Pl. Reply at 8 (citing Mr. Ulman's deposition).) In sum, any agreement on behalf of St. Paul to pay was repudiated in December 2012, and the contract was breached when the payments were reduced in August 2013, the "act" referenced by the Third Circuit in *R.C. Beeson, Inc.*, 337 F. App'x at 244. Accordingly, the Court finds that Plaintiff's cause of action accrued in August 2013. *See id.*

Alternatively, at the very latest, the contract was certainly repudiated in March 2016, approximately two and a half years after Plaintiff's payments were reduced. On February 29, 2016, another attorney representing plaintiff sent, via letter, a "formal demand" to St. Paul requesting that St. Paul "make up the shortfall Ms. Pinto experienced as a result of the liquidation of" ELNY. (ECF No. 125-23 at 3; *see also* Defs. SUMF ¶ 55; Resp. to Defs. SUMF ¶ 55.) On March 14, 2016,

10

Mr. Ulman sent a responsive letter again unambiguously rejecting the request, explaining that:

> St. Paul's position regarding Ms. Pinto's payments has not changed since December 27, 2012, when I sent the attached letter to Ms. Pinto's previous counsel, Rosalie Spelman. . . . St. Paul has no responsibility for the continuing payments, or for the shortfalls in those payments that have occurred since August 2013, when ELNY was liquidated.

(ECF No. 125-24 at 2; *see also* Defs. SUMF ¶ 56; Resp. to Defs. SUMF ¶ 56.) This unequivocal statement is a clear repudiation of St. Paul's continuing obligation to pay Plaintiff. *See R.C. Beeson, Inc.*, 337 F. App'x at 244. In fact, Plaintiff does not meaningfully contest St. Paul's argument that the breach occurred in March 2016, at the latest. (*See* Defs. MSJ at 25–26 (arguing that the breach occurred in 2016 at the latest); Pl. Opp at 12–23 (not responding to this argument).)

In sum, by March 2016, Plaintiff had been receiving reduced payments for approximately two and a half years, and she was three times informed in writing that St. Paul would not make up the difference. (*See* Defs. SUMF ¶¶ 44–46; Resp. to Defs. SUMF ¶¶ 44–46.) This "combination of an act [here, multiple acts] deliberately repudiating the agreement and an act [again, multiple acts] indicating to the non-breaching party that any future performance either will not occur or will not be in compliance with the contract terms commence[d] the running of the statute of limitations" in March 2016 at the absolute latest. *R.C. Beeson, Inc.*, 337 F. App'x at 244. Accordingly, at the latest, the statute of limitations expired in March 2022, six months before Plaintiff brought her action. (ECF No. 1-1 at 8.)

## B.    PLAINTIFF'S ARGUMENTS TO THE CONTRARY FAIL

Plaintiff attempts to evade this outcome in two ways: *first*, she argues that damages did not accrue until August 2019 because the partial payments she had been receiving were allocated towards the earliest deficiencies first, meaning the first missed payment did not occur until August 2019, (Pl. Opp. at 12–16; Pl. MSJ at 34–37), and *second*, she argues that the doctrine of anticipatory repudiation does not apply to unilateral contracts for the payment of money, (Pl. Opp.

11

at 16–23; Pl. MSJ at 37–39). Both arguments fail.

### 1.    The Subsequent Payments Did Not Change the Accrual Date

Plaintiff contends that under the Restatement of Contracts, "a payment is applied to the earliest matured debt," meaning that the partial payments she received after August 2013 applied to the earliest debts sequentially and in the aggregate offset any damages prior to August 2019, rendering August 2019 the accrual date of her action.[8] (Pl. Opp. at 13 (quoting Restatement (Second) of Contracts § 260 (A.L.I. 1981)); Pl. MSJ at 34 (same).) The problem with Plaintiff's argument is that this rule does not apply where, as here, the debt at issue is disputed.

"As a general proposition, a creditor who is owed more than one debt by a debtor may apply the payments to the debtor's account in any manner it chooses so long as the debtor has not issued specific directions to the contrary." *Craft v. Stevenson Lumber Yard, Inc.*, 843 A.2d 1076, 1085 (N.J. 2004). However, if the creditor does not make such an election, "the payment is applied to debts *to which the creditor could have applied it* with just regard to the interests of third persons, the debtor and the creditor." Restatement (Second) of Contracts § 260(1) (A.L.I. 1981) (emphasis added). Specifically, as Plaintiff rightly notes, the payment is generally "applied to the earliest matured debt." *Id.* § 260(2). The Restatement also makes it clear, however, that "[a] creditor cannot apply such a payment to a debt if . . . the debt is disputed." *Id.* § 259(2); *see id.* § 260 cmt. c (noting that Section 260 incorporates this rule). Because, for the reasons discussed above, the debt *was* disputed in December 2012 or March 2016, at the latest, the Restatement rule does not apply to automatically shift the accrual date to 2019 or allow Plaintiff to do so.[9] *See Craft*, 843 A.2d at

---

[8] Although not the basis on which the Court rejects Plaintiff's clever but unsupported argument, the Court notes that it is skeptical of the notion that once a breach of contract action arises via repudiation that subsequent partial payments could continually shift the date at which the claim accrued after that initial repudiation.

[9] Additionally, this rule does not apply where the debtor has directed the payment to a specific debt. *See* Restatement (Second) of Contracts § 260(1) (A.L.I. 1981). The debtor's intent to direct payment to a

1086 (approvingly quoting Restatement (Second) of Contracts §§ 259–60 (A.L.I. 1981)); *see also id.* at 1086–87 ("Together those [Restatement] sections negate any notion that the payment application rule gives every creditor under every circumstance carte blanche to apply payments as it sees fit.").

### 2. The Supreme Court of New Jersey Would Apply the Doctrine of Anticipatory Repudiation

For her argument that anticipatory repudiation[10] does not apply to a unilateral contract for the payment of money, Plaintiff again points to the Restatement. Under the Restatement, Plaintiff is correct:

> Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, *whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach.*

Restatement (Second) of Contracts § 243(3) (A.L.I. 1981) (emphasis added); *see also id.* illus. 4. However, the Supreme Court of New Jersey has yet to decide whether it will adopt this Restatement approach. *See Sethi v. Ismail*, No. 25-13448, 2026 WL 92874, at *8 n.6 (D.N.J. Jan. 13, 2026) (noting that the New Jersey Supreme Court has yet to address the applicability of this provision of the restatement).

Thus, lacking clear New Jersey law on this point, the Court "must 'predict how the New

---

specific debt need not be "manifest . . . in words." *Id.* § 258 cmt. b. Instead, "[a] direction may be inferred from other circumstances, including the performance itself." *Id.*; *see also Craft*, 843 A.2d at 1086 (approvingly quoting Restatement (Second) of Contracts §§ 258–60 (A.L.I. 1981)). Here, it is axiomatic that the monthly payments were intended to apply to debts for the specific months when they were paid. (*See* ECF No. 125-5 at 3 (setting forth the schedule of monthly payments); 128-6 at 2 (noting that a payment issued to Plaintiff on August 27, 1984 "represent[ed] the monthly installment due 8/26/84").) Accordingly, this renders contrived Plaintiff's attempt to reassign the payments to earlier, outstanding debts to avoid the statute of limitations.

[10] The Court uses the phrases "anticipatory breach" and "anticipatory repudiation" interchangeably. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 599 n.16 (6th Cir. 2004).

Jersey Supreme Court would rule if presented with this case.'" *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 119 (3d Cir. 2010) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 489 (3d Cir. 1991)). In making this prediction, the Court "must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, [and] considered *dicta*," *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) (quoting *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011)). Beyond judicial decisions, the Court must also look to "scholarly works[] and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Id.* (quoting *Meyer*, 648 F.3d at 164).

Here, in support of her argument, Plaintiff marshals the Restatement, a series of non-New Jersey cases, and a single unpublished decision by the New Jersey Superior Court, Appellate Division. (*See* Pl. Opp. at 16–18 (citing a variety of cases and Restatement (Second) of Contracts § 243 (A.L.I. 1981)); Pl. MSJ at 37–39 (same); Pl. Supp. Notice at 1 (citing *Dean v. Provisor*, No. A-1199-20, 2022 WL 2711255 (N.J. Super. Ct. App. Div. July 13, 2022) (unpublished)).) The Court has also discovered older Appellate Division cases applying this rule. *See Leslie Blau Co. v. Alfieri*, 384 A.2d 859, 878 (N.J. Super. Ct. App. Div. 1978) (published); *Mack v. Revicki*, 135 A.2d 569, 574 (N.J. Super. Ct. App. Div. 1957) (published). St. Paul, for its part, points to the Third Circuit's decision in *R.C. Beeson, Inc.* and other New Jersey Superior Court, Appellate Division decisions. (*See* Defs. Opp. 23 n.15 (citing *R.C. Beeson*, 337 F. App'x at 245 and *In re Est. of Balk*, 138 A.3d 572, 574, 576 (N.J. Super. Ct. App. Div. 2016) (published)); Resp. to Pl. Supp. Notice at 3 (citing *Bank of Am., N.A. v. Maher*, No. A-1708-22, 2024 WL 1597749, at *3 (N.J. Super. Ct. App. Div. Apr. 12, 2024) (unpublished)).)

14

### a.   The Supreme Court of New Jersey's Guidance

The Court begins by considering the existing case law of the Supreme Court of New Jersey "related" to this issue. *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 285 (3d Cir. 1980). In *Metromedia Co.*, the Supreme Court stated generally that "*absent a repudiation*, a plaintiff may sue for each breach only as it occurs, and the statute of limitations begins to run at that time." 655 A.2d at 1381 (emphasis added). While this does establish the baseline rule, it is not especially informative because the Supreme Court had no occasion to discuss any potential exceptions to the repudiation rule.

The case *In re Liquidation of Integrity Insurance Co.* is more instructive. 685 A.2d 1286 (N.J. 1996). There, applying common law and "ordinary contract rules," the Supreme Court held that when an insurance company, through liquidation, "repudiated its prior promise to provide insurance and bear future losses," it "breached its contract with every policyholder," entitling them "to file a claim for the full amount of the policy." *Id.* at 1290, 1293. In other words, the repudiation allowed claimants to potentially collect for the entire breach, including the insurer's "not-yet-due payments." *Id.* at 1292. This is important guidance because "insurance policies are generally unilateral contracts." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 599 (6th Cir. 2004). This means that if anticipatory repudiation does not apply to unilateral contracts, it should not apply to insurance contracts and vice versa. *See MGM Enters., Inc. v. Rockingham Ins. Co.*, No. 22-588, 2022 WL 3329289, at *4 n.2 (M.D. Pa. Aug. 11, 2022) ("There is considerable debate over whether anticipatory repudiation is possible in the insurance context, primarily because insurance policies have traditionally been considered unilateral contracts and therefore not capable of being repudiated prior to the time performance is due."); Hazel Beh & Jeffrey W. Stempel, *Misclassifying the Insurance Policy: The Unforced Errors of Unilateral Contract*

15

*Characterization*, 32 Cardozo L. Rev. 85, 150–51 (2010) ("The unilateral construction of the insurance contract precludes applying anticipatory repudiation doctrine by those courts that adhere to the rule that anticipatory repudiation does not apply when contracts are fully executed on one side."); *see also* Howard O. Hunter, *Modern Law of Contracts* § 11:15 (December 2025 update) (noting that "[i]nsurance contracts (especially disability policies) are one of the major categories of contracts still covered by the [unilateral contract] exception" to anticipatory repudiation). Thus, in applying anticipatory repudiation to this specific type of unilateral contract, the Supreme Court of New Jersey implicitly rejected the Restatement approach.

To put it another way, the applicability of anticipatory repudiation in the insurance context and the general unilateral contract context should and will likely travel together. In *In re Liquidation of Integrity Insurance Co.*, the Supreme Court of New Jersey held that anticipatory repudiation applies in the insurance context. Accordingly, it is highly likely that the Supreme Court of New Jersey would also apply it to unilateral contracts generally.

In fact, *In re Liquidation of Integrity Insurance Co.* is arguably sufficiently on point as to render it "controlling" case law from the Supreme Court of New Jersey mooting any predictive inquiry. *See Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 492 (3d Cir. 2015) ("In the absence of a controlling decision by the [state] Supreme Court, we must predict how it would decide the questions of law presented in this case."). However, even under a more conservative analysis, *In re Liquidation of Integrity Insurance Co.* strongly suggests that the Supreme Court of New Jersey would apply anticipatory repudiation to unilateral contracts.

### b. Other Authorities

*R.C. Beeson, Inc.* provides further support for the conclusion that the Supreme Court of New Jersey would apply anticipatory repudiation to unilateral contracts. *See State Farm Mut. Auto.*

*Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir. 2000) (looking to "federal appeals and district court cases interpreting state law" for guidance). There, applying New Jersey law, the Third Circuit applied the doctrine of anticipatory repudiation where the contract at issue required the repudiating party to "renegotiate with Beeson or to make payments as expected under the terms of [previous agreements]." *R.C. Beeson, Inc.*, 337 F. App'x at 245. The parties here dispute whether the contract at issue in *R.C. Beeson, Inc.* was bilateral or unilateral, and the Third Circuit's decision does not provide much guidance. (*See* Pl. Opp. at 15; Defs. Reply at 5–6.)

Upon the Court's examination, it appears that the contract at issue in *R.C. Beeson, Inc.* was unilateral, or it at least became uniliteral after R.C. Beeson, Inc.'s performance. *See* 23 Williston on Contracts § 63:60 (4th ed. May 2025 update) ("[T]he courts have said that 'with reference to unilateral contracts, or bilateral contracts that have become unilateral by full performance on one side . . . the text writers and decisions are in general accord that the doctrine of anticipatory breach has no application.'" (quoting *Phelps v. Herro*, 137 A.2d 159, 163 (Md. 1957))); 10 Corbin on Contracts § 53.12 (2026) (noting that this exception may apply where "[t]he contractual obligation was, or has become, unilateral").

R.C. Beeson, Inc. was retained as a consultant for Seagram (the party that eventually repudiated), and their agreement provided that "they would 'negotiate in good faith' the interest Seagram would pay to Beeson for each project Beeson developed or brought to Seagram." *R.C. Beeson, Inc. v. Coca Cola Co.*, No. 07-4806, 2008 WL 4447106, at *1 (D.N.J. Sept. 26, 2008) (quoting *R.C. Beeson, Inc.*, No. 07-4806, ECF No. 10-1 ¶ 3), *aff'd*, 337 F. App'x 241. Subsequent agreements were then entered into pursuant to the terms of that initial agreement. *See id* at *2–3. Thus, R.C. Beeson, Inc. performed its part of the contract by developing products for Seagram, leaving Seagram with a unilateral obligation to pay R.C. Beeson, Inc. and potentially renegotiate

17

those payments. Therefore, *R.C. Beeson, Inc.* represents an instance of the Third Circuit applying anticipatory repudiation to a unilateral contract under New Jersey law.

*R.C. Beeson, Inc.* is not directly on point but offers helpful, suggestive guidance. Seagram's unilateral obligation in that case involved an obligation to pay money and renegotiate its agreement with R.C. Beeson, Inc. *See R.C. Beeson, Inc.*, 337 F. App'x at 244–45. Under the Restatement approach, the exception to anticipatory repudiation only applies "[w]here at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments." Restatement (Second) of Contracts § 243(3) (A.L.I. 1981). As a result, because the contract involved more than the mere payment of money by requiring renegotiation, *R.C. Beeson, Inc.* does not explicitly contradict the Restatement approach.

In contrast to the Restatement, other sources apply the exception to anticipatory repudiation for unilateral contracts more generally, including contracts for monetary payments as a prime example. *See Smyth v. United States*, 302 U.S. 329, 356 (1937) ("[T]he doctrine of anticipatory breach has *in general* no application to unilateral contracts, and particularly to such contracts for the payment of money only." (emphasis added)); 10 Corbin on Contracts § 53.12 (2026) (noting that this rule applies "especially when" the remaining performance is to pay "mere money instal[l]ments"). Accordingly, *R.C. Beeson, Inc.* pushes back against the rationale for the Restatement approach and is another suggestive signal that the Supreme Court of New Jersey would not apply the Restatement's approach.

Moreover, *R.C. Beeson, Inc.* is especially applicable to this case because it dealt not only with anticipatory repudiation generally but in the specific context of anticipatory repudiation's intersection with New Jersey's statute of limitations. As the Third Circuit explained, "[a]llowing [Plaintiff] to pursue its claims after standing idle for over a decade would undermine New Jersey's

statute of limitations." *R.C. Beeson, Inc.*, 337 F. App'x at 245. The same is certainly true here where Plaintiff initially filed her case in this District before voluntarily dismissing it and refiling in Pennsylvania for "strategy reasons relating to the statutes of limitations." (Resp. to Defs. SUMF ¶ 60.) Accordingly, *R.C. Beeson, Inc.* further supports the Court's conclusion that anticipatory repudiation would apply in this context and the statute of limitations began to run in August 2013, or March 2016, at the latest. *See* 23 Williston on Contracts § 63:60 (4th ed. May 2025 update) (noting that in the context of the unilateral contract exception to anticipatory breach that it is not "easy to draw a distinction between unilateral promises to pay money and unilateral promises for other performances").

The Appellate Division decisions referenced above do not undermine this conclusion. Those cases are mixed in their outcomes, and as such, "do not bear a great deal of weight" in predicting state law. *Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am.*, 739 F. Supp. 3d 259, 266 (D.N.J 2024). In fact, the most recent published case supports the Court's prediction by suggesting that anticipatory repudiation can apply to unilateral contracts to pay money. *See In re Est. of Balk*, 138 A.3d at 574, 576 (noting that the contract at issue required installment payments and explaining that "*absent a repudiation*, a plaintiff may sue for each breach only as it occurs, and the statute of limitations begins to run at that time" (emphasis added) (quoting *Metromedia*, 655 A.2d at 1381)); *see also City of Erie v. Guaranty Nat'l Ins. Co.*, 109 F.3d 156, 160 (3d Cir. 1997) (noting that in predicting state law federal courts look to "current trends in the law").

Other sources too do not lead to a different result. Plaintiff cites the Restatement and cases and scholars endorsing her proposed exception.[11] Notwithstanding these sources, many cases *do*

---

[11] *See* Restatement (Second) of Contracts § 243(3) (A.L.I. 1981); *see, e.g.*, 10 Corbin on Contracts § 54.4 (2026) (noting that this exception has been "frequently stated and generally held" and compiling cases); 23 Williston on Contracts § 63:60 (4th ed. May 2025 update) (noting that this rule has been "generally adopted" and compiling cases); *Phelps*, 137 A.2d at 163 (noting that "with reference to unilateral contracts . . . the

*not* apply the rule and it is subject to intense criticism by both judges and scholars.[12] In light of this mix of authority, these other sources do not undermine the Court's well-grounded prediction that the Supreme Court of New Jersey would apply the doctrine of anticipatory repudiation to a unilateral contract for the payment of money.

As for the Restatement in particular, while it provides guidance, the Court does not believe that the Supreme Court of New Jersey would mechanically adopt it. *See Holmes*, 598 F.3d at 118 ("In predicting how the highest state court would decide an issue . . . [w]e *may* also look to 'scholarly treatises, the Restatement of Law, and germane law review articles.'" (emphasis added) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir. 1980))); *cf. Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1086 n.27 (3d Cir. 1988) (explaining in the torts context that "[a]lthough we often have stated that New Jersey follows the Restatement approach, it is clear,

---

text writers and decisions are in general accord that the doctrine of anticipatory breach has no application" and compiling sources); *Rosenfeld v. City Paper Co.*, 527 So. 2d 704, 705 n.1 (Ala. 1988) (compiling cases).

[12] *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus.*, 252 F.3d 911, 915 (7th Cir. 2001) (Posner, J.) (referring to the unilateral contract exception to anticipatory repudiation as "dubious" and explaining that "[w]hy the doctrine of anticipatory repudiation should be so limited eludes our understanding"); *Combs*, 354 F.3d at 600 (noting that "there is ample authority for the proposition that the promising party can anticipatorily repudiate a unilateral contract," arguing that "[t]o limit anticipatory repudiation to bilateral contracts makes little sense," and compiling cases); 10 Corbin on Contracts §§ 54.4–6 (2026) (rejecting this approach and arguing, among other things, that it is based on an "erroneous idea"); *LeTarte v. W. Side Dev., LLC*, 855 A.2d 505, 509 (N.H. 2004) (citing Corbin and rejecting the Restatement approach); *Phelps*, 137 A.2d at 234–35 (Hammond, J., dissenting) (arguing that this "dubious exception to the rule of immediate allowance of damages for anticipatory breach of contract" should be rejected as it has been "by the ablest judges and scholars."); 23 Williston on Contracts § 63:60 (4th ed. May 2025 update) (noting that the rule "has sometimes been questioned" and collecting cases); Beh & Stempel, *supra*, at 150 & n.270 (noting that the rule "certainly does not have universal support" and compiling sources); Howard, *supra*, § 11:15 (noting that "[t]his exception to the doctrine of anticipatory breach has been criticized, and exceptions to the exception have weakened its effect," arguing that "[t]here is no good reason for the continued existence of this exception," and compiling cases (footnote omitted)); Keith A. Rowley, *Anticipatory Repudiation of Letters of Credit*, 56 SMU L. Rev. 2235, 2252 (2003) (explaining that "[a] number of leading commentators—including both Professor Corbin and Professor Williston, who otherwise disagreed on the advisability of permitting a promisee to sue for anticipatory breach prior to the time the promisor's performance was due—and a slowly growing number of courts have questioned the logic behind excluding unilateral contracts (and bilateral contracts made unilateral by virtue of one party's performance) from the doctrine's reach" and compiling sources (footnotes omitted)).

however, that New Jersey may depart from it"). Given the "dubious" nature of the Restatement's exception and the "ample authority for the proposition that the promising party can anticipatorily repudiate a unilateral contract," the Restatement and other sources discussed above do not change the Court's conclusion that the Supreme Court of New Jersey would apply anticipatory repudiation in the context of this case.[13] *Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus.*, 252 F.3d 911, 915 (7th Cir. 2001) (Posner, J.); *Combs*, 354 F.3d at 600; *see also supra* note 12.

This prediction also comports with the general rationale behind statutes of limitations in New Jersey. As the Supreme Court of New Jersey has explained, "[t]he purposes of statutes of limitations," are: "(1) to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and (2) to 'penalize dilatoriness and serve as a measure of repose.'" *Rivera v. Prudential Prop. & Cas. Ins. Co.*, 514 A.2d 1296, 1300 (N.J. 1986) (quoting *Ochs v. Fed. Ins. Co.*, 447 A.2d 163, 166 (N.J. 1982)) "Moreover, . . . statutes of limitations 'are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.'" *Fox v. Millman*, 45 A.3d 332, 339 (N.J. 2012) (quoting *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945)).

Such rationales are implicated here. As the parties' briefs indicate, aspects of this case would require the Court to determine whether individuals were aware of the existence of certain documents when signing agreements in 1984 or whether those documents were attached to those

---

[13] The Court, of course, does not mean to predict that the Supreme Court of New Jersey would apply anticipatory repudiation to *all* unilateral contracts. Even critics of the unilateral contract exception note that it "may be justifiable in cases where the payments will be due only on some contingency that is uncertain." 10 Corbin on Contracts § 53.12 (2026).

agreements when they were signed.[14] (*See* Pl. Opp. at 25 ("Ms. Pinto has no knowledge of what the missing Exhibit A might provide when she signed the [SAR] on August 4, 1984." (cleaned up)); Defs. Opp. at 31 (claiming that "the parties had actual knowledge of" of the terms of those four-decade old documents (internal quotation marks omitted)); Pl. SUMF ¶¶ 13–14; Resp. to Pl. SUMF ¶¶ 13–14.) Moreover, Plaintiff was dilatory in waiting so long after the breach and repudiation to file a lawsuit, exacerbated by her voluntary dismissal of her initial action only to refile it in an out-of-state district she believed might be more favorable to her admitted statute of limitations conundrum. (*See* Resp. to Defs. SUMF ¶ 60); *Pinto I*, 674 F. Supp. 3d at 181; *cf. Bynane v. Bank of N.Y. Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 362 (5th Cir. 2017) (determining that the district court did not abuse its discretion in holding that voluntary dismissal and refiling of a case "created an undue delay and suggested a dilatory motive").

The Supreme Court of New Jersey has also explained that "[a]n underlying purpose of statutes of limitations is to reduce uncertainty concerning the timeliness of a cause of action" and warned that statutes of limitations cannot promote this purpose "when decisions inject ambiguity into their application." *McGrogan v. Till*, 771 A.2d 1187, 1193–94 (N.J. 2001). Adopting Plaintiff's proposed approach would inject such ambiguity and uncertainty because it is sometimes difficult for courts to determine whether a contract is unilateral or bilateral. *See* 1 Corbin on Contracts § 1.23 (2026) ("It is not always an easy matter to determine whether an offer looks to the creation of a unilateral or bilateral contract. . . . The form of words used by the parties is not conclusive, especially when examined out of their setting . . . ."); *see also* Howard, *supra*, § 11:15

---

[14] Because the Court decides this case in St. Paul's favor on statute of limitations grounds, it need not reach these arguments or other potential grounds to grant either parties' Motion for Summary Judgment.

22

(noting that the unilateral contract exception "is an anachronism that many courts avoid by construing contracts to be bilateral or by finding that there is still some performance due.").

In sum, in light of the Supreme Court of New Jersey's decision in *In re Liquidation of Integrity Insurance Co.*, the Third Circuit's decision in *R.C. Beeson, Inc.*, assorted scholarly perspectives, New Jersey's policies underlying statutes of limitations, and the fact that other predictive tools are mixed, the Court has little trouble predicting that the Supreme Court of New Jersey would apply the doctrine of anticipatory repudiation to this case. The Court holds that the limitations period began to run in August 2013, or March 2016, at the latest and this action is barred.

This is the natural result of what has occurred in this case. Representatives of Plaintiff three times contacted St. Paul via letter attempting to determine if St. Paul would make up the difference in Plaintiff's payments. Each time, those requests were rebuffed via letter. As early as December 2012 Plaintiff was aware that her payments would be reduced, yet she sat on her rights for years. After December 2012, she waited more than three years before again contacting St. Paul. She then waited another five years before filing her action in this District. Then, cognizant of the significant statute of limitations issues here in New Jersey, she voluntarily dismissed that action and refiled in Pennsylvania for "strategy reasons relating to the statutes of limitations." (Resp. to Defs. SUMF ¶ 60.) The Court cannot endorse this delay. Doing so would run roughshod over to the policies underpinning New Jersey's statutes of limitations of "(1) . . . stimulat[ing] litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend . . . and (2) . . . 'penaliz[ing] dilatoriness . . . .'" *Rivera*, 514 A.2d at 1300 (quoting *Ochs*, 447 A.2d at 166).

Accordingly, the Court finds that this action was filed outside of New Jersey's six-year

statute of limitations for contract actions. N.J. Stat. Ann. § 2A:14-1(a). The Court, therefore, **GRANTS** St. Paul's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment as moot. *See Williams v. Webb Law Firm, P.C.*, No. 12-1702, 2014 WL 3890358, at *13 (W.D. Pa. July 31, 2014), *aff'd*, 628 F. App'x 836 (3d Cir. 2015).

## CONCLUSION

For the reasons set forth above, St. Paul's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**. An appropriate Order accompanies this Opinion.

_____

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: March 17, 2026